1  David E. Bower, SBN 119546
   Barbara A. Rohr, SBN 273353
2  **FARUQI & FARUQI, LLP**
3  10866 Wilshire Boulevard, Suite 1470
   Los Angeles, California 90024
4  Tel: (424) 256-2884
   Fax: (424) 256-2885
5
6  Tina Wolfson, SBN 174806
   Robert Ahdoot, SBN 172098
7  Theodore W. Maya, SBN 223242
   Keith Custis, SBN 218818 (Of Counsel)
8  **AHDOOT & WOLFSON, PC**
   1016 Palm Avenue
9  West Hollywood, California 90069
   Tel: 310-474-9111
10 Fax: 310-474-8585
11
   Counsel for Plaintiffs
12 MICHAEL STEZ and JILL LAWRENCE

13              **UNITED STATES DISTRICT COURT**

14    **NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION**

| | |
|---|---|
| 15  MICHAEL STEZ and JILL LAWRENCE,<br>Individually and On Behalf of All Others Similarly<br>16  Situated, | Case No. 4:14-CV-01871-PJH<br><br>**AMENDED CLASS ACTION COMPLAINT** |
| 17 | |
| 18              Plaintiffs, | JURY TRIAL DEMANDED |
| 19        v. | **1. Breach of Express Warranty Under the<br>    Common Law of Each State** |
| 20  H.J. HEINZ COMPANY, a Pennsylvania<br>21  corporation, | **2. Violations of California's Consumer Legal<br>    Remedies Act**<br>**3. Violations of Cal.'s Unfair Competition Law** |
| 22              Defendant. | **4. Violations of Cal.'s False Advertising Law**<br>**5. Breach of Express Warranty Under Cal. Law**<br>**6. Violations of Florida's Deceptive & Unfair** |
| 23 | **    Trade Practices Act** |
| 24 | **7. Breach of Express Warrant Under Fla. Law** |

25

26

27

28

---

Plaintiffs Michael Stez and Jill Lawrence, by and through their counsel, bring this Amended Class Action Complaint against H.J. Heinz Company ("Heinz" or "Defendant"), on behalf of themselves and all others similarly situated, and allege, upon personal knowledge as to their own actions and their counsel's investigations, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.      This is a consumer protection and false advertising class action.  Defendant markets, advertises and distributes Heinz Distilled White Vinegar ("Heinz Vinegar" or the "Product"), which it prominently advertises as "all natural."  Heinz Vinegar is not all natural.  Heinz Vinegar is derived from genetically modified crops.  A genetically modified ("GM") crop, such as the corn from which Heinz Vinegar is derived, is a crop whose genetic material has been altered by humans using genetic engineering techniques.  The World Health Organization defines GM organisms (which include crops) as "organisms in which the genetic material (DNA) has been altered in a way that does not occur naturally."  GM crops are not natural, but man-made.  There are wide-ranging controversies related to GM crops, including health risks from ingesting foods derived from GM crops and negative environmental effects associated with growing GM crops.  The use and labeling of GM foods is the subject of a variety of laws, regulations, and protocols worldwide.

2.      Defendant admits on its website that "Heinz® Distilled White Vinegar and Apple Cider Flavored Vinegar *are sourced from corn*, not from wheat, rye, barley, or oats."[1] (emphasis added).  The U.S.D.A. estimates that the percentage of GM corn grown in the U.S. was 90% in 2013.[2]  Given the amount of comingling of corn in grain silos, the corn from which Heinz Vinegar is derived contains GM corn.

3.      Although Heinz Vinegar is made from GM corn, Defendant knowingly, recklessly, and/or negligently markets its Heinz Vinegar as being "All Natural" and as being originated from "All

---

[1] *See* http://www.heinzvinegar.com/faq.aspx (last visited on Sept, 16, 2014).

[2] *See* Economic Research Service, USDA, Genetically engineered varieties of corn, upland cotton, and soybeans, by State and for the United States, 2000-14 (alltables.xls), available at http://www.ers.usda.gov/data-products/adoption-of-genetically-engineered-crops-in-the-us.aspx#.VBcWqC5dWyR (last visited September 16, 2014).

CASE NO. 4:14-CV-01871-PJH; AMENDED CLASS ACTION COMPLAINT

Natural" sources.  Defendant labels Heinz Vinegar as "All Natural" because consumers perceive all natural foods as healthier, better, and more wholesome.  The market for all natural foods has grown rapidly in the past few years, a trend Defendant seeks to take advantage of through false and misleading advertising.

4.      Additionally, any consumer who purchased Heinz Vinegar – irrespective of their motivation for purchasing Heinz Vinegar – suffered harm in the form of a higher price that Defendant was able to command for the Product based on the false representation that it is "All Natural" and derived from "All Natural" sources.

5.      Plaintiff Stez brings claims against Defendant individually and on behalf of a class of all other similarly situated purchasers of the Product in California for: (1) violations of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*; (2) California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, (3) California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*; and (4) breach of express warranty under California Law.  Plaintiff Lawrence brings claims against Defendant individually and on behalf of a class of all other similarly situated purchasers of the Product in Florida for: (1) violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.*; and (2) breach of express warranty under Florida Law.

6.      Plaintiffs seek an order requiring Defendant to, among other things: (1) cease the unlawful marketing; (2) conduct a corrective advertising campaign; and (3) pay damages and restitution to Plaintiffs and Class members.

## **PARTIES**

7.      Plaintiff Michael Stez is a consumer residing in Sonoma County, California.

8.      Plaintiff Jill Lawrence is a consumer residing in Collier County, Florida.

9.      Defendant H. J. Heinz Company is a Pennsylvania corporation with its principal place of business located in Pittsburgh, Pennsylvania.  Defendant manufactures, markets, and distributes the Product to consumers in California, Florida, and throughout the United States.

## **JURISDICTION AND VENUE**

10.      This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  The aggregated claims of the individual class members exceed $5,000,000,

2

exclusive of interest and costs, and this is a class action in which more than two-thirds of the proposed plaintiff class, on the one hand, and Defendant, on the other, are citizens of different states.

11.     This Court has jurisdiction over Defendant because it is registered to conduct business in California, has sufficient minimum contacts in California or otherwise intentionally avails itself of the markets within California, through the promotion, sale, marketing, and distribution of the Heinz Vinegar sold in California, to render the exercise of jurisdiction by this Court proper and necessary.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) because Plaintiff Stez is a resident of this District, Defendant regularly conducts business throughout this District, and a substantial part of the events and/or omissions giving rise to this action occurred in this District.

## FACTUAL ALLEGATIONS

**A.      Defendant Deceptively Labels The Products As "All Natural"**

13.     Throughout the Class Period, Defendant has prominently and conspicuously labeled and advertised its Heinz Vinegar as "All Natural."  The labeling and marketing on the Heinz Vinegar communicates a straight-forward, material message, which is that the "All Natural" Heinz Vinegar is 100% natural *and* derived from 100% natural ingredients.  However, unbeknownst to Plaintiffs, the Heinz Vinegar actually is derived from GM corn.

14.     The core deceptive, false, and misleading representations that Heinz Vinegar is "All Natural" are conspicuously and prominently placed on the Heinz Vinegar label for every person to see as soon as they pick up the Heinz Vinegar bottle to read it.  By way of illustration, the "All Natural" representation on the Heinz Vinegar label appears like this:

 

3

15.    By conspicuously and prominently placing the "All Natural" label on the Heinz Vinegar, Defendant has ensured that all consumers purchasing the Heinz Vinegar would be exposed to its "All Natural" claim.

**B.    Defendant Deceptively Lists "Select Sun-Ripened Grain" as an Ingredient Instead Of "Corn"**

16.    Defendant further misleads consumers by hiding the fact that Heinz Vinegar is made from corn.  Rather than list "corn" as an ingredient, the ingredient list states:

> INGREDIENTS: MADE FROM SELECT SUN-RIPENED GRAIN, DILUTED WITH WATER TO A UNIFORM PICKLING AND TABLE STRENGTH OF 5% (50 GRAINS) ACIDITY.

17.    Thus, Heinz's labeling is deceptive for the additional reason that Heinz purposefully omits to indicate on the label that it is derived from corn, thus quashing any suspicion a consumer who reads the ingredients may have about the GMO nature of the vinegar, given the prevalence of GMO corn in the U.S. market.

18.    In referring to "select sun-ripened grain," as opposed to "corn," Heinz is further violating the FDA's directive to list ingredients in food products by their common and usual name and engaging in unlawful and deceptive business practices. 21 C.F.R. § 101.4(a)(1).

**C.    Food Derived From Genetically Modified Organisms Is Not All Natural**

19.    Genetically modified crops do not occur in nature, and as such are not "all natural."  On the contrary, genetically modified crops are crops that are genetically manipulated from their natural state.  For example, Monsanto, one of the largest producers of genetically modified crop seed, defines "Genetic modification (genetic engineering) – The technique of removing, modifying or adding genes to a living organism via genetic engineering or other more traditional methods.  Also referred to as gene splicing, recombinant DNA (rDNA) technology or genetic engineering."[3]  Monsanto also defines Genetically Modified Organisms ("GMO").  GMO is "[p]lants or animals that have had their genetic makeup altered to exhibit traits that are not naturally theirs.  In general, genes are taken (copied) from one organism that shows a desired trait and transferred into the genetic code of another organism."[4]

---

[3] *See* http://www.monsanto.com/newsviews/Pages/glossary.aspx (last visited Sept. 16, 2014).
[4] *See id*.

CASE NO. 4:14-CV-01871-PJH; AMENDED CLASS ACTION COMPLAINT

20.     The World Health Organization's ("WHO") definition of GMO is consistent with how Monsanto defines them:  "Genetically modified (GM) foods are foods derived from organisms whose genetic material (DNA) has been modified in a way that does not occur naturally, e.g. through the introduction of a gene from a different organism."[5]  WHO also cautions that "All GM foods should be assessed before being allowed on the market."[6]

21.     The United States Environmental Protection Agency ("EPA") for Prevention, Pesticides, And Toxic Substances, has distinguished between conventional breeding of plants "through natural methods, such as cross-pollination" and genetic engineering.  "Conventional breeding is a method in which genes for pesticidal traits are introduced into a plant through natural methods, such as cross-pollination."  "Genetically engineered plant-incorporated protectants are created through a process that utilizes several different modern scientific techniques to introduce a specific pesticide-producing gene into a plant's DNA genetic material."[7]

22.     Romer Labs, a company that provides diagnostic services to the agricultural industry, including tests to detect and determine the existence of GM crops, defines GM crops as "[a]griculturally important plants [that] are often genetically modified by the insertion of DNA material from outside the organism into the plant's DNA sequence, allowing the plant to express novel traits that normally would not appear in nature, such as herbicide or insect resistance. Seed harvested from GMO plants will also contain these modifications."[8]

23.     As indicated by the various industry, government and health protection agency organizations cited above, GM crops and GMOs are not "all natural."  In addition, products made from GM crops and GMOs are not "all natural."

24.     The U.S.D.A. estimates that the percentage of GM corn grown in the U.S. was 25% in

---

[5] *See* http://www.who.int/topics/food_genetically_modified/en/ (last visited Sept. 16, 2014).

[6] *Id.*

[7] *See* EPA Questions & Answers, Biotechnology: Final Plant-Pesticide/Plant Incorporated Protectants (PIPs) Rules, dated July 19, 2001 at http://www.epa.gov/scipoly/biotech/pubs/qanda.pdf (last visited Sept. 16, 2014).

[8] *See* http://www.romerlabs.com/en/knowledge/gmo/ (last visited Sept. 16, 2014).

CASE NO. 4:14-CV-01871-PJH; AMENDED CLASS ACTION COMPLAINT

2000, 73% in 2007, and 90% in 2013.[9]

25.     The market for natural products is large and ever growing and consumers are willing to pay a premium for products they believe to be natural, healthy and/or organic.  Natural Foods Merchandiser magazine's 2010 Market Overview reported significant growth for the natural and organic products industry.  Gleaning more than $81 billion dollars in revenue in 2010 alone, the industry grew seven percent (7%) from 2009, revealing that consumers' desire for natural products is huge and continues to grow.

26.     Defendant's "all natural" representations are deceptive, false, misleading, and unfair to consumers who are injured in fact by purchasing Heinz Vinegar that Defendant claims is "All Natural" when the Heinz Vinegar actually is made from GM corn, and is not natural.

27.     Certain tests, such as a Polymerase Chain Reaction test, that generally can be used to detect genetic material (DNA) in a sample, may be unable to detect an ingredient that was derived from a GMO source in the finished product where the finished product is refined or processed, like Heinz Vinegar.

28.     Defendant's "All Natural" representation is false, misleading, and deceptive even if certain tests are unable to detect GMOs in Heinz Vinegar because Defendant is falsely, misleadingly and deceptively representing that the Heinz Vinegar is sourced from "All Natural" ingredients.  Heinz Vinegar is not sourced from "All Natural" ingredients, however.  Heinz Vinegar is sourced from GM corn.

**D.     Heinz Vinegar Is Also Not Natural Because It Is Highly Processed**

29.     Independent of the use of GM corn to manufacture Heinz Vinegar, Defendant's "All Natural" claims are false because Heinz Vinegar is so heavily processed that it no longer is chemically the same as the GM corn from which it is sourced.  The various processes by which the GM corn is converted to Heinz Vinegar renders the final Product chemically-derived and not-natural.  The Product no longer bears any natural chemical resemblance to their source GM crops as a result of the extensive

---

[9] *See* Economic Research Service, USDA, Genetically engineered varieties of corn, upland cotton, and soybeans, by State and for the United States, 2000-14 (alltables.xls), available at http://www.ers.usda.gov/data-products/adoption-of-genetically-engineered-crops-in-the-us.aspx#.VBcWqC5dWyR (last visited September 16, 2014).

process by which they are refined.

30.     The Grain Processing Corporation ("GPC") supplies ethyl alcohol to Defendant, which Defendant uses in the manufacture of Heinz Vinegar.

31.     GPC produces pure ethyl alcohol using "No. 2 yellow dent corn." Dent corn is often used as livestock feed, in industrial products, or to make processed foods.

32.     The first step in the process is steeping the corn in a mild acidic water solution. This helps to prepare the corn for separation into its component parts: corn oil, corn fiber, corn gluten and corn starch.

33.     Then the corn is wet milled, where it is soaked or "steeped" in water and dilute sulfurous acid for 24 to 48 hours. This steeping facilitates the separation of the grain into its many component parts. After steeping, the corn slurry is processed through a series of grinders to separate the corn germ.

34.     The unmodified starch and any remaining water from the mash can then be fermented into ethanol. In this step, enzymes are added to the mash to convert the starch to dextrose, a simple sugar.

35.     On information and belief, ammonia is added to the mash for pH control and as a nutrient to the yeast. The mash is processed in a high-temperature cooker to reduce bacteria levels ahead of fermentation. The mash is cooled and transferred to fermenters where yeast is added and the conversion of sugar to ethanol and carbon dioxide ($CO_2$) begin

36.     The conversion from carbohydrate to vinegar involves multi-step processing utilizing chemicals, including ammonia, for pH control, enzymatic function, as well as heating, and use of specific strains of bacteria all under careful monitored settings.

37.     Further processing of vinegar, following substrate conversion to acetic acid may include filtration, clarification distillation and pasteurization.

**E.    Defendant's False and Misleading Advertising is Likely to Deceive Reasonable Consumers**

38.     Defendant's false and misleading representations and omissions are likely to deceive Plaintiffs and other reasonable consumers.

39.     Reasonable consumers must and do rely on food label representations and information in making purchase decisions.

40.     Defendant's statement that the Product is "All Natural," is material to a reasonable consumer's purchase decision because reasonable consumers, such as Plaintiffs and members of the California and Florida Classes, care whether food products contain unnatural, synthetic, artificial, and/or GM ingredients, and whether it's highly processed and/or refined, especially when a product claims to be "All Natural."

41.     Reasonable consumers attach importance to an "All Natural" claim when making a purchasing decision.

42.     According to a June 2014 consumer survey conducted by Consumer Reports, more than 8 out of 10 consumers believe that packaged foods carrying the "natural" label should come from food that contains ingredients grown without pesticides (86%), do not include artificial ingredients (87%), and do not contain GM organisms (GMOs) (85%).[10]

43.      Defendant markets and advertises the Product as "All Natural" to increase sales derived from the Product.  Defendant is well-aware that claims of food being "All Natural" are material to reasonable consumers.

44.     Upon information and belief, in making the false, misleading, and deceptive representations and omissions, Defendant knew and intended that consumers would pay a price premium for the Product over comparable products that are not labeled "All Natural," furthering Defendant's private interest of increasing sales for the Product, and decreasing the sales of products by Defendant's competitors that do not claim to be "All Natural."

F.     **Plaintiffs' Reliance and Damages**

45.     Plaintiff Michael Stez purchased Heinz Vinegar in Sonoma County, California within the applicable statute of limitations.

46.     The packaging of Heinz Vinegar that Mr. Stez purchased contained the representation that the Heinz Vinegar is "All Natural."

---

[10] *See* http://finance.yahoo.com/news/consumer-reports-survey-majority-americans-100000330.html (last visited Sept. 16, 2014).

47.     Mr. Stez believed Defendant's representation that Heinz Vinegar is "All Natural."  He relied on the "All Natural" representation in making his purchase decisions for himself and his family.  Mr. Stez would not have purchased the Heinz Vinegar had he known it was not, in fact, "All Natural" because it was derived from GM crops.

48.     Mr. Stez paid for an "All Natural" Product, but he received a Product that was not "All Natural."  Specifically, he received a Product made from corn that was genetically manipulated in a laboratory to exhibit traits corn does not possess in nature and highly processed.

49.     The Product Mr. Stez received was worth less than the product for which he paid.  Mr. Stez was injured in fact and lost money as a result of Defendant's improper conduct.

50.     Plaintiff Jill Lawrence purchased Heinz Vinegar in Naples, Florida within the statute of limitations.

51.     The packaging of Heinz Vinegar that Ms. Lawrence purchased contained the representation that it was "All Natural."

52.     Ms. Lawrence believed Defendant's representation that the Heinz Vinegar was "All Natural."  She relied on the "All Natural" representation in making her purchase decisions and would not have purchased the Heinz Vinegar had she known it was not, in fact, "All Natural" because it was derived from GM crops and highly processed.

53.     Ms. Lawrence paid for an "All Natural" product, but she received a Product that was not "All Natural."  Specifically, she received a Product made from corn that was genetically manipulated in a laboratory to exhibit traits corn does not possess in nature and was highly processed.

54.     The Product that Ms. Lawrence received was worth less than the product for which she paid.  Ms. Lawrence was injured in fact and lost money as a result of Defendant's improper conduct.

55.     Plaintiffs and members of the California and Florida Classes, defined below, paid a price premium for the Product because the Product claimed to be "All Natural."

56.     Plaintiffs and members of the California and Florida Classes would not have purchased the Product had they known that they were derived from ingredients that are not "All Natural," and/or would not have paid as much as they did for the Product if it was not falsely advertised as "All Natural."

1

## CLASS ACTION ALLEGATIONS

2      57.     Plaintiffs seek relief in their individual capacity and as representatives of all others who

3  are similarly situated.  Pursuant to Fed. R. Civ. P. 23(a) and (b)(2) and/or (b)(3), Plaintiffs seek

4  certification of a Nationwide class and, alternatively, two subclasses, a California class and a Florida

5  class.  The Nationwide class is initially defined as follows:

6          All persons residing in the United States who, from April 23, 2010 until
           the date notice is disseminated to the Class (the "Class Period"),
7          purchased Heinz Distilled White Vinegar (the "Nationwide Class").

8      58.     The California and Florida subclasses are initially defined as follows:

9          All persons residing in California who, from April 23, 2010 until the
           date notice is disseminated to the Class (the "Class Period"), purchased
10         Heinz Distilled White Vinegar (the "California Class").

11         All persons residing in Florida who, from April 23, 2010 until the date
           notice is disseminated to the Class (the "Class Period"), purchased Heinz
12         Distilled White Vinegar (the "Florida Class").

13     59.     Excluded from each of the above Classes are Defendant, including any entity in which

14 Defendant has a controlling interest, is a parent or subsidiary, or which is controlled by Defendant, as

15 well as the officers, directors, affiliates, legal representatives, predecessors, successors, and assigns of

16 Defendant.  Also excluded are the judges and court personnel in this case and any members of their

17 immediate families, as well as any person who purchased the Product for the purpose of resale.

18     60.     Plaintiffs reserve the right to amend or modify the Class definitions with greater

19 specificity or division into subclasses after having had an opportunity to conduct discovery.

20     61.     Numerosity.  Fed. R. Civ. P. 23(a)(1).  Each Class is so numerous that joinder of all

21 members is unfeasible.  While the precise number of Class members has not been determined at this

22 time, Plaintiffs are informed and believe that millions of consumers have purchased Heinz Vinegar

23 during the class period.

24     62.     Commonality.  Fed. R. Civ. P. 23(a)(2) and (b)(3).  There are questions of law and fact

25 common to each Class, which predominate over any questions affecting only individual members of

26 each respective Class.  These common questions of law and fact include, without limitation:

27         a.     Whether Defendant falsely and/or misleadingly misrepresented the Product as

28                being "All Natural";

b.     Whether Defendant's misrepresentations are likely to deceive reasonable consumers;

c.     Whether Defendant violated California's Consumer Legal Remedies Act, California Civil Code § 1750, *et seq.*;

d.     Whether Defendant violated California's Unfair Competition Law, California Business & Professions Code § 17200, *et seq.*;

e.     Whether Defendant violated California's False Advertising Law, California Business & Professions Code § 17500, *et seq.*;

f.     Whether Defendant violated Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.*;

g.     Whether Defendant breached express warranties; and

h.     The nature of the relief, including equitable relief, to which Plaintiffs and the Class members are entitled.

63.     <u>Typicality</u>. Fed. R. Civ. P. 23(a)(3). Each Plaintiff's claims are typical of the claims of the Class he or she seeks to represent. Plaintiffs and all Class members were exposed to uniform practices and sustained injuries arising out of and caused by Defendant's unlawful conduct.

64.     <u>Adequacy of Representation</u>. Fed. R. Civ. P. 23(a)(4). Plaintiffs will fairly and adequately represent and protect the interests of the members of the Classes. Further, Plaintiffs' counsel is competent and experienced in litigating class actions.

65.     <u>Superiority of Class Action</u>. Fed. R. Civ. P. 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of this action since joinder of all Class members is impracticable and will waste judicial resources. Moreover, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting outcomes. Finally, there will be no difficulty in managing this action as a class action.

66.     <u>Injunctive and Declaratory Relief</u>. Fed. R. Civ. P. 23(b)(2). Defendant's misrepresentations are uniform as to all members of each Class. Defendant has acted or refused to act on grounds that apply generally to each Class, so that final injunctive relief or declaratory relief is appropriate with respect to each Class as a whole.

**FIRST CAUSE OF ACTION**

**Breach of Express Warranty Under The Common Law Of Each State**

**(On Behalf of Plaintiffs and the Nationwide Class)**

67.     Plaintiffs incorporate the substantive allegations contained in Paragraphs 1 through 66 as if fully set forth herein.

68.     Plaintiffs and other members of the Nationwide Class formed a contract with Defendant at the time they purchased the Product.  The terms of that contract include the promises and affirmations of fact Defendant make on the Product's packaging and through marketing and advertising, including Defendant's promise that the Product is "all natural," as described above.  This marketing and advertising constitute an express warranty and became part of the basis of the bargain, and are part of the standardized contract between Plaintiffs and other members of the Nationwide Class, on the one hand, and Defendant, on the other.

69.     All conditions precedent to Defendant's liability under this contract have been performed by Plaintiffs and other members of the Nationwide Class when they purchased the Product for its ordinary purposes.

70.     At all times relevant to this action, Defendant has breached its express warranty about the Product because the Product is not "all natural," as it is made from GM crops or plants that are not 100% natural.

71.     As a result of Defendant's breach of its express warranty, Plaintiffs and other members of the Nationwide Class were damaged in an amount to be proven at trial.

**SECOND CAUSE OF ACTION**

**Violations of California's Consumer Legal Remedies Act, Cal. Civil Code § 1750, *et seq.***

**(On Behalf of Plaintiff Stez and the California Class)**

72.     Plaintiff Stez incorporates the substantive allegations contained in Paragraphs 1 through 66 as if fully set forth herein.

73.     This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.* (the "CLRA"), because Defendant's actions and conduct described herein constitute transactions that have resulted in the sale or lease of goods or services to

consumers.

74.     Plaintiff Stez and each member of the California Class are consumers as defined by California Civil Code § 1761(d).  Defendant intended to sell the Product.

75.     The Product is a good within the meaning of Civil Code § 1761(a).

76.     Defendant violated the CLRA in at least the following respects:

a.     in violation of § 1770(a)(2), Defendant misrepresented the source of the ingredients of the Product as all natural, when they were not;

b.     in violation of § 1770(a)(5), Defendant represented that the Product has characteristics, ingredients, and benefits that it does not have;

c.     in violation of § 1770(a)(7), Defendant represented that the Product is of a particular standard, quality, or grade when it is of another;

d.     in violation of § 1770(a)(9), Defendant has advertised the Product with intent not to sell it as advertised; and

e.     in violation of § 1770(a)(16), Defendant represented that the Product has been supplied in accordance with previous representations, when it was not.

77.     Defendant violated the Act by representing the Product as "all natural" when the Product is not all natural.  Defendant knew, or should have known, that the representations and advertisements were false and misleading.

78.     Defendant's acts and omissions constitute unfair, deceptive, and misleading business practices in violation of California Civil Code § 1770(a).

79.     On April 23, 2014, Plaintiff Stez notified Defendant in writing, by certified mail, of the violations alleged herein and demanded that Defendant remedy those violations.  Defendant received Plaintiff Stez's notice on April 28, 2014.

80.     Defendant has failed to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to California Civil Code § 1782.  Plaintiff Stez thus amends the Complaint to add claims for actual, punitive, and statutory damages pursuant to the CLRA.  Plaintiff Stez and the California Class also seek a Court order enjoining the above-described wrongful acts and practices of

Defendant and for restitution, disgorgement, statutory damages, and any other relief that the Court deems proper.

81.   Defendant's conduct is malicious, fraudulent, and wanton in that Defendant intentionally and knowingly provided misleading information to the public.

### THIRD CAUSE OF ACTION

**Violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.***

**(On Behalf of Plaintiff Stez and the California Class)**

82.   Plaintiff Stez incorporates the substantive allegations contained in Paragraphs 1 through 66 as if fully set forth herein.

83.   Defendant committed unlawful, unfair, and/or fraudulent acts in violation of California's Unfair Competition Law, California Business & Professions Code § 17200, *et seq.* (the "UCL"), by labeling, marketing, advertising, promoting and selling Heinz Vinegar as "all natural" when it is not all natural, and by fraudulently omitting from the list of ingredients on the Heinz Vinegar label the common and usual name of corn in violation of 21 C.F.R. § 101.4(a)(1).

84.   Defendant's conduct is unlawful, in part, for violating the California Consumer Legal Remedies Act and California's False Advertising Law (as discussed below).

85.   Defendant's business practices are unfair because misrepresenting the Product as "all natural" is anti-competitive and further offends established public policies demanding fair competition.  Defendant's conduct is also unethical, immoral, unscrupulous, and oppressive.  Further, Defendant's conduct harms Plaintiff Stez and other members of the California Class.

86.   Defendant's conduct is fraudulent since the foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the nature of the Product as being "all natural" and as being derived from "all natural" ingredients, to induce consumers to purchase the Product, and to deceive reasonable consumers who have relied upon Defendant's misrepresentations and/or omissions.

87.   Plaintiff Stez and members of the California Class were injured as a direct and proximate result of Defendant's conduct because they paid for an "All Natural" Product, which they would not have purchased had they know the true facts.

88.     As a result of Defendant's violations of the UCL, Plaintiff Stez and other members of the California Class have suffered injury in fact and lost money or property.  Had Plaintiff Stez known the truth – that Heinz Vinegar is derived from GM corn – Plaintiff Stez would not have purchased the Heinz Vinegar.  Plaintiff Stez requests that the Court issue sufficient equitable relief to restore California Class members to the position they would have been in had Defendant not engaged in unfair competition, including by ordering restitution of all funds that Defendant may have acquired as a result of its unfair competition, and by requiring Defendant to engage in a corrective advertising campaign.

## FOURTH CAUSE OF ACTION

**Violations of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.***

**(On Behalf of Plaintiff Stez and the California Class)**

89.     Plaintiff Stez incorporates the substantive allegations contained in Paragraphs 1 through 66 as if fully set forth herein.

90.     By the acts and conduct of Defendant alleged herein, Defendant committed false advertising by its misrepresentations that the Product is "all natural," and by fraudulently omitting from the list of ingredients on the Heinz Vinegar label the common and usual name of corn in violation of 21 C.F.R. § 101.4(a)(1), in conducting business, trade, and commerce in the state of California in violation of California's False Advertising Law, California Business & Professions Code § 17500, *et seq.* (the "FAL").

91.     The foregoing acts and practices were directed at consumers.

92.     The foregoing false advertisements are misleading in a material way because they fundamentally misrepresent the nature of the Product as being "all natural" to induce consumers to purchase the Product while Defendant has had actual knowledge that this is false, or Defendant should have known by exercising reasonable care that these statements are false and untrue and/or misleading.

93.     Plaintiff Stez and other members of the California Class reasonably relied upon Defendant's misrepresentations and/or omissions by purchasing the Product and, as a result, have been injured because they paid for a Product they would not have purchased had they known it was not "all natural" as stated.

15

94.     As a result of Defendant's violations of the FAL, Plaintiff Stez and other members of the California Class have suffered injury in fact and lost money or property.  Had Plaintiff Stez known the truth – that Heinz Vinegar is derived from GM corn – Plaintiff Stez would not have purchased the Heinz Vinegar.  Plaintiff Stez requests that the Court issue sufficient equitable relief to restore California Class members to the position they would have been in had Defendant not engaged in unfair competition, including by ordering restitution of all funds that Defendant may have acquired as a result of its unfair competition, and by requiring Defendant to engage in a corrective advertising campaign.

## FIFTH CAUSE OF ACTION

### Breach of Express Warranty Under California Law

### (On Behalf of Plaintiff Stez and the California Class)

95.     Plaintiff Stez incorporates the substantive allegations contained in Paragraphs 1 through 66 as if fully set forth herein.

96.     Plaintiff Stez and other members of the California Class formed a contract with Defendant at the time they purchased the Product.  The terms of that contract include the promises and affirmations of fact that Defendant makes on the Product's label and through marketing and advertising, including Defendant's promise that the Product is "All Natural," as described above.  This marketing and advertising constitute an express warranty and became part of the basis of the bargain, and are part of the standardized contract between Plaintiff Stez and other California Class members, on the one hand, and Defendant, on the other.

97.     All conditions precedent to Defendant's liability under this contract have been performed by Plaintiff Stez and other members of the California Class when they purchased the Product for its ordinary purposes.

98.     Defendant breached its express warranty about the Product because the Product is not "all natural," as it is made from GM crops or plants that are not 100% natural.

99.     Defendant was on notice that it breached its express warranty prior to April 23, 2014.

100.    As a result of Defendant's breach of its express warranty, Plaintiff Stez and other members of the California Class were damaged in an amount to be proven at trial.

**SIXTH CAUSE OF ACTION**

**Violations of Florida's Deceptive & Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.***

**(On Behalf of Plaintiff Lawrence and the Florida Class)**

101.     Plaintiff Lawrence incorporates the substantive allegations contained in Paragraphs 1 through 66 as if fully set forth herein.

102.     This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.* (the "FDUTPA").

103.     The express purpose of FDUTPA is to "protect the consuming public...from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

104.     Fla. Stat. § 501.204(1) declares as unlawful "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

105.     The sale of the Product at issue was a "consumer transaction" within the scope of FDUTPA.

106.     Plaintiff Lawrence is a "consumer" as defined by Fla. Stat. § 501.203.

107.     Defendant's Products are goods within the meaning of FDUTPA and Defendant is engaged in trade or commerce within the meaning of FDUTPA.

108.     Defendant's unfair and deceptive practices are likely to mislead – and have misled – reasonable consumers, such as Plaintiff Lawrence and members of the Florida Class, and therefore, violate Fla. Stat. § 500.04.

109.     Defendant has violated FDUTPA by engaging in the unfair and deceptive practices described above, which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers.

110.     Specifically, Defendant has represented that the Product is "All Natural" when, in fact, the Product is made from GM Corn.  Defendant also has fraudulently omitted from the list of ingredients on the Heinz Vinegar label the common and usual name of corn in violation of 21 C.F.R. § 101.4(a)(1).

111.    Plaintiff Lawrence and Florida Class members have been aggrieved by Defendant's unfair and deceptive practices in violation of FDUTPA, in that they purchased and consumed Defendant's mislabeled Product.

112.    Reasonable consumers rely on Defendant to honestly represent the true nature of its ingredients.

113.    Defendant has deceived reasonable consumers, like Plaintiff Lawrence and other members of the Florida Class, into believing the Product was something it was not; specifically that it was "All Natural."

114.    The knowledge required to discern the true nature of the Product is beyond that of the reasonable consumer – namely that the Product is or is not derived from unnatural, synthetic, artificial, and/or genetically modified ingredients.

115.    Plaintiff Lawrence and other members of the Florida Class suffered damages and are entitled to injunctive relief.  Plaintiff Lawrence seeks all available remedies, damages, and awards as a result of Defendant's violations of FDUTPA.

116.    Pursuant to Fla. Stat. §§ 501.211(2) and 501.2105, Plaintiff Lawrence and the Florida Class make claims for damages, attorneys' fees, and costs.  The damages suffered by the Plaintiff Lawrence and the Florida Class were directly and proximately caused by the deceptive, misleading, and unfair practices of Defendant.  Plaintiff Lawrence requests that the Court issue sufficient equitable relief to restore Florida Class members to the position they would have been in had Defendant not engaged in unfair competition, including by ordering restitution and disgorgement of all funds that Defendant may have acquired as a result of its unfair competition, and by requiring Defendant to engage in a corrective advertising campaign.

## SEVENTH CAUSE OF ACTION

### Breach of Express Warranty Under Florida Law

### (On Behalf of Plaintiff Lawrence and the Florida Class)

117.    Plaintiff Lawrence incorporates the substantive allegations contained in Paragraphs 1 through 66 as if fully set forth herein.

118.    Plaintiff Lawrence and other members of the Florida Class formed a contract with

Defendant at the time they purchased the Product.  The terms of that contract include the promises and affirmations of fact Defendant make on the Product's packaging and through marketing and advertising, including Defendant's promise that the Product is "all natural," as described above.  This marketing and advertising constitute an express warranty and became part of the basis of the bargain, and are part of the standardized contract between Plaintiff Lawrence and other members of the Florida Class, on the one hand, and Defendant, on the other.

119.    All conditions precedent to Defendant's liability under this contract have been performed by Plaintiff Lawrence and other members of the Florida Class when they purchased the Product for its ordinary purposes.

120.    At all times relevant to this action, Defendant has breached its express warranty about the Product because the Product is not "all natural," as it is made from GM crops or plants that are not 100% natural.

121.    As a result of Defendant's breach of its express warranty, Plaintiff Lawrence and other members of the Florida Class were damaged in an amount to be proven at trial.

## JURY DEMAND

Plaintiffs demand a trial by jury of all claims in this Complaint that are so triable.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the other members of the Classes proposed in this Complaint, respectfully request that the Court enter judgment in their favor and against Defendant, as follows:

A.      Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiffs as Class Representatives and appointing the undersigned counsel as Class Counsel;

B.      Ordering Defendant to pay actual damages (and no less than the statutory minimum damages) and equitable monetary relief to Plaintiffs and the other members of the California and Florida Classes;

C.      Ordering Defendant to pay punitive damages, as allowable by law, to Plaintiffs and the other members of these Classes;

D.     Ordering Defendant to pay statutory damages, as allowable by the statutes asserted herein, to Plaintiffs and the other members of these Classes;

E.     Awarding injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

F.     Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiffs and the other members of the California and Florida Classes;

G.     Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

CASE NO. 4:14-CV-01871-PJH; AMENDED CLASS ACTION COMPLAINT

1        H.      Ordering such other and further relief as may be just and proper.

2    DATED:  September 16, 2014                Respectfully submitted,

3

4                              **FARUQI & FARUQI, LLP**

5                              By:  /s/ David E. Bower
                               David E. Bower

6                              Barbara A. Rohr

7                              10866 Wilshire Boulevard, Suite 1470
                               Los Angeles, California 90024

8                              Tel: (424) 256-2884
                               Fax: (424) 256-2885

9                              dbower@faruqilaw.com

10                             brohr@faruqilaw.com

11                             **AHDOOT & WOLFSON, PC**

12                             By:  /s/ Tina Wolfson
                               Tina Wolfson

13                             Robert Ahdoot

14                             Theodore W. Maya
                               Keith Custis (Of Counsel)

15

16                             1016 Palm Avenue
                               West Hollywood, California 90069

17                             Tel: 310-474-9111
                               Fax: 310-474-8585

18                             twolfson@ahdootwolfson.com
                               rahdoot@ahdootwolfson.com

19                             tmaya@ahdootwolfson.com
                               keith@custis-law.com

20

21                             Counsel for Plaintiffs

22                              MICHAEL STEZ and JILL LAWRENCE

23

24

25

26

27

28

CASE NO. 4:14-CV-01871-PJH; AMENDED CLASS ACTION COMPLAINT

**AFFIDAVIT OF TINA WOLFSON**

I, Tina Wolfson, declare as follows:

1.     I am an attorney with the law firm of Ahdoot & Wolfson, P.C.  I am admitted to practice law in California and before this Court, and am a member in good standing of the State Bar of California.  This declaration is made pursuant to California Civil Code Section 1780(d).  I make this declaration based on my research of public records and upon personal knowledge and, if called upon to do so, could and would testify competently thereto.

2.     Based on my research and personal knowledge, Defendant H.J. Heinz Company ("Defendant") does business within the State of California, and Plaintiff Stez purchased Defendant's product within the State of California, as alleged in the Amended Class Action Complaint.

I declare under penalty of perjury under the laws of the United States and the State of California this 16th day of September, 2014 in San Francisco, California that the foregoing is true and correct.

<br>

_____
Tina Wolfson

CASE NO. 4:14-CV-01871-PJH; AMENDED CLASS ACTION COMPLAINT